**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| |
|---|
| LEE KENWORTHY, |
| *Plaintiff*, |
| v. |
| LYNDHURST POLICE DEPARTMENT, et al., |
| *Defendants*. |

Civil Action No. 18-12822

**OPINION**

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of four separate motions to dismiss <u>pro se</u> Plaintiff Lee Kenworthy's ("Plaintiff") Amended Complaint, ECF No. 30.1: (1) Defendant Housing Authority of Bergen County's ("HABC") Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 43; (2) Defendants Lyndhurst Police Department's (the "LPD"), Officer Philip Reina's ("Officer Reina"), Officer Haggerty's ("Officer Haggerty"), Lyndhurst Chief of Police James O'Connor's ("Chief O'Connor"), Sergeant Richard Pizzuti's ("Sergeant Pizzuti," or together with the LPD, Officer Reina, Officer Haggerty, and Chief O'Connor, the "Lyndhurst Officers"), Lyndhurst Ambulance Squad's, and the Township of Lyndhurst's ("Lyndhurst," or together with the Lyndhurst Officers and the Lyndhurst Ambulance Squad, "Lyndhurst Defendants"), Motion to Dismiss under Rule 12(b)(6), ECF No. 44; (3) Defendants Robert Martin's ("Robert"), Ann Martin's ("Ann"), Richard Anderson's ("Richard"), and Lauren Anderson's ("Lauren," or together with Robert, Ann, and Richard, the "Landlord Defendants") Motion to Dismiss under Rules 12(b)(1) and 12(b)(6), ECF No. 45; and

1

(4) Defendant Adapt Pharma, Inc.'s ("Adapt," or together with HABC, the Lyndhurst Defendants, and the Landlord Defendants, "Defendants") Motion to Dismiss under Rule 12(b)(6), ECF No. 46.

For the reasons set forth herein, Defendants' Motions to Dismiss are **GRANTED**.

# I.    BACKGROUND[1]

Plaintiff is the husband of Shayling Kenworthy ("Mrs. Kenworthy," or together with Plaintiff, the "Kenworthys") and the administrator of Mrs. Kenworthy's estate.  Am. Compl. ¶ 1. Plaintiff brings this action on behalf of himself and Mrs. Kenworthy's estate.

### A.    The Kenworthys' Dispute with the Landlord Defendants

In or around January or February 2016, the Kenworthys began renting a residence located at 287 Castle Terrace, Lyndhurst, New Jersey (the "Rental Property") from the Landlord Defendants.  See id. ¶¶ 8, 11, 23.  Before the Kenworthys moved into the Rental Property, Richard disclosed that the apartment's carpets were contaminated with urine and advised that he and Lauren would remove them.[2]  See id. ¶¶ 23-24, 26.  The carpets were not removed before the Kenworthys move-in date.  See id. ¶¶ 34.

From the beginning of their rental period and continuing through the summer of 2016, the Kenworthys and the Landlord Defendants engaged in ongoing disputes over the Rental Property's "unfit living conditions."  See id. ¶¶ 39-40, 172-73.  The Kenworthys informed the Landlord Defendants that their children had "documented asthma issues," walked them through the Rental Property so that they could smell the "horrible stench" emanating from the carpets, and stressed that the Rental Property's condition needed to be addressed "immediately."  See id. ¶¶ 74-76.  On

---

[1] On a motion to dismiss, the Court summarizes and accepts as true the facts alleged the Amended Complaint.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Plaintiff also asserts that the Rental Property was contaminated with fecal matter but does not allege whether the Landlord Defendants made any representations to that effect.  See Am. Compl. ¶¶ 23-27.

several occasions, Plaintiff offered to cover the costs of removing the carpets and remediating the Rental Property's health risks, but the Landlord Defendants refused his proposals. See id. ¶¶ 45-48, 50, 53, 61-64, 77-78. The Kenworthys also "repeatedly" requested Robert's phone number since, according to Richard and Lauren, "it was [Robert's] decision to fix or let the [Kenworthys] leave the uninhabitable, unfit home." Id. ¶ 84. They never received it. Id. ¶ 85.

During the parties' months-long quarrel over the Rental Property's condition, the Landlord Defendants "consistently" made verbal "threats" to Plaintiff and his family, id. ¶ 49, including, among other things: (1) that the Landlord Defendants would "make things bad if [the Kenworthys] tr[ied] to leave the home," id. ¶ 50, and would hold the Kenworthys responsible for removing the carpet, id. ¶¶ 55-56; (2) that the Kenworthys should "stop making waves," and not "force anyone's hand" because the "whole thing can really get bad," see id. ¶ 71; and (3) that the Kenworthys should not "do anything stupid, like move or take the kids out of school," and doing so would not be in the Kenworthys' best interests, id. ¶¶ 72-73.

In addition, Plaintiff asserts that Robert, who is allegedly an employee of the Guttenberg Police Department, a member of the United States Marshals Service, and a retired Deputy Chief of Police for Jersey City, see id. ¶¶ 28, 89: (1) intentionally intimidated Plaintiff by "display[ing] his Service Weapon, . . . [taking] it out of his holster, and . . . moving it around repeatedly," including "setting it on the kitchen counter[,] . . . placing it in the kitchen cabinets . . . [and] mov[ing it] directly over Plaintiff's head," see id. ¶¶ 28-31; (2) threatened to "make and press false charges" against Plaintiff with the LPD and New Jersey Division of Child Protection and Permanency ("DCPP"), id. ¶¶ 91-92, 96; (3) stated that the Kenworthys "will never be safe if [they] do not do as [they] are told," see id. ¶ 93, and he would "put the [Kenworthys] in a grave," id. ¶ 96; (4) threatened "physical harm [and] bodily injury . . . while simultaneously pushing

Plaintiff . . . and putting his hands on him," id. ¶ 96; (5) "slammed" his gun onto "his dashboard" and then "grabbed it . . . held it for a moment or two, and passed it from hand to hand behind his back, and then replaced it on his belt," id. ¶¶ 97-99; (6) "got into . . . Plaintiff's face to intimidate him," id. ¶ 100; and (7) told Plaintiff that his "whole family will get it if [Plaintiff] do[es] not do what [Plaintiff is] told," id. ¶ 103.

In June 2016, the Kenworthys withheld monthly rent from the Landlord Defendants. Id. ¶ 86. On July 1, 2016, Plaintiff asked Robert if they could pay him June's rent and leave the Rental Property "immediately." Id. ¶ 91. According to Plaintiff, the situation spiraled into a forty-five minute "confrontation" wherein Robert made verbal threats and engaged in much of the conduct described above. See id. ¶¶ 91-108. Robert also demanded that Plaintiff pay him "at least $2200" the following day and stated that he would talk to Plaintiff after Plaintiff was "released." Id. ¶¶ 108-09.

On or around July 8, 2016, the LPD reported to the Rental Property "at the investigation of [Robert] and upstairs tenant, Defendant Jamie Romano," and took Plaintiff into custody.[3] See id. ¶¶ 110-12. At the LPD station, Plaintiff told Sergeant Pizzuti that the incident was retaliation by "the homeowner" against Plaintiff "for trying to leave his dangerous, unsafe and uninhabitable home" and told LPD officers that Robert was threatening his family and holding them against their will. See id. ¶¶ 120-21. The Kenworthys asked the LPD to make a report based on Robert's threats. See id. ¶¶ 122-29. In response to their requests, the LPD gave the Kenworthys an email address to which they could send evidence. See id. ¶¶ 129-30.

---

[3] Aside from suggesting that the LPD arrived at Robert's and Ms. Romano's request, Plaintiff does not state the basis for the LPD's visit. His allegations appear to suggest a reported domestic dispute or an issue involving his children. See id. ¶¶ 110, 111, 113-15, 117, 119.

After being released from the LPD, Plaintiff met with members of Mrs. Kenworthy's family to discuss moving out of the Rental Property. See id. ¶¶ 130-38. They ultimately decided to move the entire family into a residence located in Whiting, New Jersey. Id. ¶ 143. Sometime between July 12 and 22, 2016, Plaintiff moved only the Kenworthys' children and Mrs. Kenworthy's parents into the Whiting residence. Id. ¶ 145.[4] Plaintiff alleges that after the move, Robert again verbally threatened Plaintiff that "this can all get even worse for them." Id. ¶ 146. At some point during the following weeks, the Kenworthys went to the LPD to provide statements about Robert's conduct. See id. ¶¶ 154, 156. The LPD advised the Kenworthys to resolve the matter "themselves" and get a lawyer to help file charges. See id. ¶¶ 158-59. The Kenworthys later made several attempts to follow up with and provide more information to the LPD, but the LPD allegedly gave them "the run-around." Id. ¶ 160; see also id. ¶ 169.

### B.    Mrs. Kenworthy's Untimely Death

On August 16, 2016, the Kenworthys emptied the Rental Property in preparation to move out. See id. ¶ 172. The Rental Property still smelled like urine and feces. Id. ¶ 173. At or about 1:51 a.m. the following morning, Mrs. Kenworthy began "having a severe acute asthma attack," and Plaintiff called 9-1-1 for "an ambulance and an EpiPen." Id. ¶ 177. LPD officers and an ambulance arrived, but according to Plaintiff, the officers "den[ied Mrs. Kenworthy] services," "held the ambulance squad outside for over 12 minutes," "threatened Plaintiff . . . to not render CPR," held him "under threats of death for 8 more minutes," and told Plaintiff to accept that "[Mrs. Kenworthy] is dying, there is no help" and to "stand down." Id. ¶¶ 178-80. Plaintiff and Mrs.

---

[4] Plaintiff alleges that DCPP visited the Rental Property and met with the Kenworthys but does not state the dates of those interactions. See, e.g., id. ¶¶ 135, 139-41. Plaintiff claims that DCPP informed the Kenworthys that their children "were to remain" in Mrs. Kenworthy's parents' home, ordered that "Plaintiff's children stay away" from him, and demanded the children's location. See id. ¶¶ 140, 146-47. Plaintiff did not name DCPP as a defendant to this action. The Court cannot discern from the allegations what role, if any, DCPP played in removing the Kenworthys' children from the Rental Property or Plaintiff's custody, but it appears that DCPP opened an investigation into Plaintiff. See id. ¶ 148.

Kenworthy told the officers that Mrs. Kenworthy was suffering from an asthma attack.  Id. ¶ 181.  Still, the officers administered Narcan to Mrs. Kenworthy.  See id.  The Lyndhurst Ambulance Squad, which was "let in" thereafter, declared Mrs. Kenworthy dead.  See id. ¶ 182.

 Plaintiff claims that the denial of medical services to Mrs. Kenworthy "primarily resulted" in her death.  See id. ¶ 189.  Plaintiff also alleges that Robert's arrest at the Kenworthys earlier requests and the Lyndhurst Officers' "proper involvement" would have saved Mrs. Kenworthy's life.  See id. ¶ 190.  Finally, Plaintiff claims that Adapt made omissions and misrepresentations about Narcan's risks for asthma sufferers, that it failed to, among other things, conduct clinical trials to that effect, and that it had a duty to warn medical providers and product users about its risks.  See id. ¶¶ 195-97.  According to Plaintiff, Adapt's misrepresentations, omissions, and conduct with respect to Narcan proximately caused Mrs. Kenworthy's death.  Id. ¶¶ 198-99.

### C.    Procedural History

Plaintiff filed this action on August 14, 2018.  ECF No. 1 (the "Original Complaint").  Defendants moved to dismiss the Original Complaint, ECF Nos. 6, 7, 14, 15, 16, and on January 1, 2019, Plaintiff filed a motion to file an amended complaint, ECF No. 30.  Defendants opposed that motion.  ECF Nos. 34-37, 40.  On June 7, 2019, the Court granted Plaintiff's motion and directed Defendants to file new motions to dismiss the Amended Complaint.  ECF No. 41.  Defendants then filed the instant motions.  ECF Nos. 43-46.

Through his Amended Complaint, Plaintiff appears to bring the following claims:  (1) a civil rights claim under 42 U.S.C. § 1983 against the Landlord Defendants, for violations of the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and against the Lyndhurst Officers for violations of the Fifth and Fourteenth Amendments ("Count One"); (2) conspiracy under 42 U.S.C. § 1983 against the Lyndhurst Officers ("Count Two");  (3) negligent

hiring and retention against the LPD and Lyndhurst ("Count Three"); (4) deliberate indifference against the LPD in violation of the Due Process Clause of the Fourteenth Amendment ("Count Four"); (5) wrongful death against the LPD and the Lyndhurst Ambulance Squad ("Count Five"); (6) a survival civil rights claim under 42 U.S.C. § 1983 for Mrs. Kenworthy's "pain and suffering" ("Count Six"); (7) a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., against the Landlord Defendants and the Lyndhurst Officers ("Count Seven"); (8) common law negligence against Adapt ("Count Eight"); (9) common law gross negligence against Adapt ("Count Nine"); and (9) common law intentional infliction of emotional distress ("IIED") against the Landlord Defendants, the LPD, and Adapt ("Count Ten"). See id. ¶¶ 204-89.

On July 1, 2019, the HABC and the Lyndhurst Defendants filed separate motions to dismiss. ECF Nos. 43-44. The Landlord Defendants and Adapt filed separate motions to dismiss two days later. ECF Nos. 45-46.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233 (internal quotation marks and citation omitted). To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Because Plaintiff is <u>pro se</u>, the Court must liberally construe the Amended Complaint under "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). "Yet there are limits to [the Court's] procedural flexibility," and "<u>pro se</u> litigants must still allege sufficient facts in their complaints to support a claim." <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 245 (3d Cir. 2013).

**B.      Rule 12(b)(1)**

Under Rule 12(b)(1), the plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. <u>See</u> <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir. 1991). In resolving a Rule 12(b)(1) motion, a court first determines whether the motion presents a "facial" or "factual" attack. <u>See</u> <u>Constitution Party of Pa. v. Aichele</u>, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," <u>id.</u> at 358, and "does not dispute the facts alleged in the complaint," <u>Davis v. Wells Fargo</u>, 824 F.3d 333, 346 (3d Cir. 2016). A court reviewing a facial attack must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." <u>Constitution Party of Pa.</u>, 757 F.3d at 358. Here, HABC and the Landlord Defendants' Motions are facial attacks because they assert the Court does not have subject matter jurisdiction over the Amended Complaint pursuant to the <u>Rooker-Feldman</u> doctrine. <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923). The Landlord Defendants additionally contend that the Court lacks jurisdiction because they are private actors not subject to liability under 42 U.S.C. § 1983.

## III.   ANALYSIS

### A.   Counts One, Two, Four, Five, and Six: Civil Rights Claims

In Count One, Plaintiff alleges that the Landlord and Lyndhurst Defendants are liable under Section 1983 for committing various constitutional-rights violations.   In Count Two, Plaintiff contends that the Lyndhurst Officers conspired to violate the constitutional rights asserted in Count One.   Counts Four and Five allege that the Lyndhurst Officers and Lyndhurst Ambulance Squad violated Mrs. Kenworthy's Fourteenth Amendment due process right to receive adequate medical treatment.   Finally, in Count Six, Plaintiff brings a survival claim on behalf of Mrs. Kenworthy's estate, seeking damages under Section 1983.   The Court considers Plaintiff's claims against the Landlord Defendants and the Lyndhurst Defendants in turn.

#### i.   The Landlord Defendants[5]

The Landlord Defendants argue that the Court lacks subject matter jurisdiction over Count One pursuant to Rule 12(b)(1) because they are private actors not subject to Section 1983 liability. The Court agrees.

Section 1983 is a vehicle for asserting certain violations of federal constitutional and statutory rights.   See City of Oklahoma City v. Tuttle, 471 U.S. 808, 817 (1985).   A plaintiff must satisfy two elements to prove a Section 1983 claim: "(1) that the conduct complained of was

---

[5] The Landlord Defendants argue that the Rooker-Feldman doctrine bars Plaintiff's claims against them because Plaintiff filed similar claims in state court, which were dismissed with prejudice.   The Rooker-Feldman doctrine bars a claim under two circumstances:  (1) "if the federal claim was actually litigated in state court prior to the filing of the federal action" or (2) "if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.   In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005).   Based on the nature and disposition of Plaintiff's state case, the Court finds that Rooker-Feldman does not bar Plaintiff's federal claims.   First, the state court did not decide Plaintiff's case on the merits, but rather dismissed it with prejudice under New Jersey Court Rule 4:23-5(a)(2) for a discovery violation.   See ECF No. 45.3, Ex. I. Second, Plaintiff's state complaint appears to have alleged a negligence claim against the Landlord Defendants.   ECF No. 45.2. Ex. A.   Here, however, Plaintiff alleges federal civil rights claims distinct from his state negligence claim. His civil rights claims were thus not "actually litigated" in state court before he filed this action and disposition of them would not require the Court to "determine that the state court judgment was erroneously entered in order to grant the requested relief."   In re Knapper, 407 F.3d at 581.

committed by a person acting under the color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." Schneyder v. Smith, 653 F.3d 313, 319 (3d Cir. 2011).

Plaintiff alleges in Count One that the Landlord Defendants deprived him of his First Amendment free speech, First Amendment freedom of association, and Fourteenth Amendment due process rights. Even accepting his allegations as true, Plaintiff does not plead any facts demonstrating that the Landlord Defendants, who are all private individuals, acted under the color of state law when they allegedly violated Plaintiff's (or Mrs. Kenworthy's) constitutional rights. "'[M]ere[ ] private conduct, no matter how discriminatory or wrongful[,]'" does not fall within the scope of Section 1983. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)). Although private actors can be liable under Section 1983 if they "jointly engaged with state officials in a challenged action," such that they can be deemed to have acted under color of law, Dennis v. Sparks, 449 U.S. 24, 27-28 (1980), Count One does not allege a conspiracy or any other joint conduct between the Landlord and Lyndhurst Defendants.[6] Nor does it state facts plausibly demonstrating another basis on which the Court could hold the Landlord Defendants liable under Section 1983. For these reasons, Count One is dismissed against the Landlord Defendants. See Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law.").

---

[6] Count One uses the word "conspired" but alleges two separate conspiracies—one between the Landlord Defendants to violate Plaintiff's First and Eighth Amendment rights, and one between the Lyndhurst Defendants to violate his Fifth Amendment due process and Fourteenth Amendment equal protection rights. Compare Am. Compl. ¶¶ 206-07, 209 with id. ¶¶ 208, 210-13. Even if the Court read Count One to allege one conspiracy between those defendants, Plaintiff does not allege any specific facts raising an inference that they conspired to violate his constitutional rights.

## ii. The Lyndhurst Defendants

The Lyndhurst Defendants argue that Plaintiff's civil rights claims fail as a matter of law under Monell v. Department of Social Services, 436 U.S. 658 (1978). They argue that Count One must be dismissed under Rule 12(b)(6) because the Fifth Amendment applies only to federal—not state—government officials, and Plaintiff has not set forth facts showing that the Lyndhurst Defendants treated similarly-situated individuals differently than Plaintiff in violation of the Fourteenth Amendment. Finally, the Lyndhurst Defendants argue that Count Four is legally deficient because the Fourteenth Amendment protects only involuntarily committed patients' rights to adequate medical care.

### 1. Claims Against Lyndhurst[7]

The Lyndhurst Defendants argue that they are shielded from Section 1983 liability because Plaintiff has failed to allege a municipal policy or custom that caused his alleged constitutional-rights violations. The Court agrees that Plaintiff's civil rights claims against Lyndhurst must be dismissed under Monell. But Monell is inapplicable to the individual officers and the Lyndhurst Ambulance Squad, who may be subject to individual Section 1983 liability.[8]

"[A] local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." Monell, 436 U.S. at 694; see also Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (explaining that municipal liability under Section 1983 cannot be based on the theory of respondeat superior). It may, however, "be held responsible as an entity

---

[7] As a preliminary matter, Plaintiff's Section 1983 claims against the LPD are dismissed because "police departments cannot be sued in conjunction with municipalities" in Section 1983 actions. Padilla v. Twp. of Cherry Hill, 110 F. App'x 272, 278 (3d Cir. 2004); Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.6 (3d Cir. 1997) ("[W]e treat the municipality and its police department as a single entity for purposes of section 1983 liability.").

[8] At this stage, the Court cannot conclude based on the record whether the Lyndhurst Ambulance Squad is an arm of the municipality such that it and Lyndhurst should be treated as a single entity. However, because as discussed in this Opinion, because the claims against the Lyndhurst Ambulance Squad fail, the Court does not reach this issue.

when the injury inflicted is permitted under its adopted policy or custom." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). To establish municipal liability under Section 1983, a plaintiff must demonstrate: (1) deprivation of a constitutional right; (2) the municipality had a policy, custom, or practice; (3) the policy, custom, or practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy was the "moving force" behind the constitutional violation. Vargas v. Philadelphia, 783 F.3d 962, 974 (3d Cir. 2015).

In Counts One, Two, and Four, Plaintiff fails to allege any facts to show the existence of a municipal policy, custom, or practice that was the proximate cause of any alleged deprivation of his constitutional rights. Nor has Plaintiff claimed that any such municipal policy, custom, or practice was the moving force behind his alleged constitutional-rights violations. Accordingly, Counts One, Two, and Four are dismissed against Lyndhurst.

### 2. Claims Against the Individual Lyndhurst Officers

#### a. Counts One and Two

The Lyndhurst Defendants argue that Counts One and Two should be dismissed for failure to state a claim. The Court agrees.

First, Plaintiff's claim that Officer Reina, Officer Haggerty, Chief O'Connor, and Sergeant Pizzuti violated his Fifth Amendment due process rights "when they refused to take a police report and perform a thorough investigation," Am. Compl. ¶ 208, fails because the Fifth Amendment Due Process Clause applies only to federal—not state—officials. Bergdoll v. City of New York, 515 F. App'x 165, 170 (3d Cir. 2013); see also Myers v. Cnty. of Somerset, 515 F. Supp. 2d 492, 504 (D.N.J. 2007) ("[T]he rights provided by the Fifth Amendment do not apply to the actions of state officials."). Affording Plaintiff the benefit of analyzing this claim under the Fourteenth Amendment Due Process Clause does not change the result. "[A]n allegation of failure to

investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." Graw v. Fantasky, 68 F. App'x 378, 383 (3d Cir. 2003) (internal quotation marks and citation omitted); Sanders v. Downs, 420 F. App'x 175, 180 (3d Cir. 2011) ("[T]he District Court correctly reasoned that there is no constitutional right to the investigation or prosecution of another."). Plaintiff has not identified a cognizable constitutional right related to his failure to investigate claim. Nor has he alleged a connection between his other Section 1983 claims against the Lyndhurst Defendants, which focus on the Lyndhurst officers' conduct at the scene of Mrs. Kenworthy's death, and those officers' failure to investigate the Landlord Defendants' conduct. His allegations are thus not sufficient to state a Section 1983 due process claim.

Second, Plaintiff's allegation that the officers violated his Fourteenth Amendment Equal Protection Clause rights "when they intentionally treated [him and Mrs. Kenworthy] differently than similarly situated crime victims," Am. Compl. ¶ 210, is deficient because he has not sufficiently alleged: (1) two of the three requisite elements of an Equal Protection Clause claim— membership in a protected class and disparate treatment based on that membership, see Kasper v. Cnty. of Bucks, 514 F. App'x 210, 214 (3d Cir. 2013); or (2) facts demonstrating that he was subject to discriminatory treatment under a particular law regardless of his membership in a particular group or class. The latter, commonly known as the "class-of-one" theory, requires Plaintiff to show "that he 'was intentionally treated differently from others similarly situated . . . and that there was no rational basis for such treatment.'" Carson v. Mulvihill, 488 F. App'x 554, 563 (3d Cir. 2012) (quoting Phillips, 515 F.3d at 243); see Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). While Plaintiff alleges that the Lyndhurst Officers intentionally treated him differently from other similarly situated crime victims, he does not allege that they lacked a rational

basis for doing so.  Counts One and Two thus plainly fail to state a civil rights claim against the individual Lyndhurst Officers.

Because Plaintiff's Section 1983 claims are deficient, his Section 1983 conspiracy claim in Count Two also fails.  PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 832 n.23 (D.N.J. 1993) ("[A] § 1983 conspiracy claim is not actionable without a violation of § 1983."); see also White v. Brown, 408 F. App'x 595, 599 (3d Cir. 2010) (finding that district court properly granted summary judgment on plaintiff's Section 1983 conspiracy claim for failure to "establish an underlying violation of his constitutional rights").  Further, the Amended Complaint lacks a factual basis suggesting an agreement among the Lyndhurst Defendants or any other defendants to violate Plaintiff's Fourteenth Amendment equal protection rights.  See Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 295 (3d Cir. 2018) (explaining that a plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: an agreement and concerted action") (internal quotation marks and citation omitted).  Plaintiff's bare allegations that a conspiracy existed are insufficient, even employing the liberal pleading standard afforded to pro se litigants. See Foley v. Chrysler, No. 13-1679, 2014 WL 1292549, at *4 (D.N.J. Mar. 28, 2014) (dismissing pro se litigant's Section 1983 conspiracy claim that police officials conspired to have witnesses provide false statement against the plaintiff based on the plaintiff's bare allegations, and lack of factual support, about that conspiracy).   Count Two is therefore dismissed.

### b.    Count Four

The Lyndhurst Defendants argue that Count Four should be dismissed because the Fourteenth Amendment "protects [only] involuntarily committed patients' rights to adequate medical care" under Youngberg v. Romeo, 457 U.S. 307 (1982), and Plaintiff has not alleged that

Mrs. Kenworthy was an involuntarily committed patient in the state's control. The Court disagrees.

"[T]he touchstone of due process is the protection of the individual against arbitrary action of the government." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998) (internal quotation marks and citation omitted). Executive action violates Fourteenth Amendment substantive due process when it is "so egregious, so outrageous, that it may fairly be said to" shock the conscience. Id. at 846, 847 n.8. "[T]he degree of culpability required to meet the 'shock the conscience' standard depends on the circumstances that confront those acting on the state's behalf." Schieber v. City of Philadelphia, 320 F.3d 409, 417 (3d Cir. 2003). First, in "hyperpressurized environment[s] requiring a snap judgment, an official must actually intend to cause harm." Kedra v. Schroeter, 876 F.3d 424, 437 (3d Cir. 2017) (internal quotation marks and citation omitted). Second, where the state actor is required to act "in a matter of hours or minutes," the official must "disregard a great risk of serious harm." Id. (internal quotation marks and citation omitted). Finally, "where the actor has time to make an 'unhurried judgment[ ],' a plaintiff need only allege facts supporting an inference that the official acted with a mental state of 'deliberate indifference.'" Id. (citation omitted).

"Generally, in cases involving claims that a person's substantive due process rights have been violated by inadequate attention to the person's medical needs, the plaintiff needs to show[ ] . . . that the state actor acted with deliberate indifference to a serious medical need." Morales v. City of Jersey City, No. 05-5423, 2009 WL 1974164, at *8 (D.N.J. July 7, 2009). Deliberate indifference exists when the state official acted with "'conscious disregard of a substantial risk of serious harm,' or 'willful disregard' demonstrated by actions that 'evince a willingness to ignore a foreseeable danger or risk.'" Kedra, 876 F.3d at 437 (internal citations omitted). Thus, while

Youngberg observed a Fourteenth Amendment right to adequate medical care for involuntarily committed patients, it did not foreclose other aggrieved individuals from bringing substantive due process claims against state actors under the Fourteenth Amendment.

Here, in viewing the facts in the light most favorable to Plaintiff, the Amended Complaint adequately alleges a Section 1983 claim against the individual Lyndhurst officers who were present at the Rental Property and purportedly delayed the Lyndhurst Ambulance Squad from rendering medical care to Mrs. Kenworthy. Plaintiff alleges that those officers acted with deliberate indifference by intentionally holding the Lyndhurst Ambulance Squad outside for up to fourteen minutes after its arrival, even though Mrs. Kenworthy required emergency medical services. Plaintiff also claims that during that time, those officers threatened Plaintiff, told him to accept that Mrs. Kenworthy was dying, to "stand down," and that "there is no help just accept this," while Plaintiff begged the officers to "save her." Accepting these facts as true, the officers' conduct raises an inference that they knew Mrs. Kenworthy required emergency medical services yet intentionally or recklessly held the Lyndhurst Ambulance Squad from rendering aid. Such facts may potentially suggest that the officers acted with deliberate indifference—and perhaps, intentional disregard—to Mrs. Kenworthy's substantive due process rights.

Notwithstanding Count Four's viability, however, the Amended Complaint refers only to "responding officers" and does not specify which officers were present and engaged in the alleged unconstitutional conduct. Because Plaintiff is required to identify the officers liable for such conduct under Section 1983, Count Four is dismissed. Plaintiff may file an amended pleading identifying the officers against whom Count Four is brought.

### c. Counts Five and Six

The Lyndhurst Defendants argue that Counts Five and Six are legally deficient because Plaintiff did not plead a constitutional-rights violation. The Court disagrees but nonetheless finds that dismissal of Counts Five and Six is warranted.

In Count Five, Plaintiff alleges a Section 1983 wrongful death claim, asserting that the Lyndhurst Officers and the Lyndhurst Ambulance Squad violated Mrs. Kenworthy's Fourteenth Amendment substantive due process right to adequate medical treatment by negligently delaying and providing those services. Aside from adding the Lyndhurst Ambulance Squad as a potentially liable party, Count Five appears to allege the same constitutional-rights violation alleged in Count Four. Both Counts Four and Five seek liability under Section 1983 for conduct purportedly causing Mrs. Kenworthy's death. Accordingly, to survive, Count Five must meet the "shocks the conscience" standard for pleading a substantive due process claim. See Lewis, 523 U.S. at 846, 847 n.8. The critical difference between Counts Four and Five, however, is that Count Five claims the Lyndhurst Officers and Ambulance Squad were negligent—not deliberately indifferent—in failing to properly render necessary medical services to Mrs. Kenworthy. See Am. Compl. ¶¶ 237-41. Under the "shocks the conscience" standard, government actors cannot be "held liable for actions that are merely negligent." Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999). Count Five is therefore dismissed as a matter of law.[9]

In Count Six, Plaintiff brings a claim for survivorship, alleging that "[Mrs. Kenworthy] . . . was forced to endure great . . . pain and suffering because of the Defendants conduct before her death" and seeks damages "under Section 1983" for that conduct. Am. Compl. ¶ 244. Under

---

[9] The present pleading mentions negligence in the context of a Section 1983 claim, which for the reasons set forth above, are not actionable. To the extent that Plaintiff is attempting to assert a state law negligence claim, that claim must be clearly set forth in any amended pleading as a separate cause of action, specifying the appropriate individual defendants.

the New Jersey Survival Act, N.J.S.A. § 2A:15-3, an administrator ad prosequendum of a decedent may bring an action that the decedent could have brought had he or she lived.  See Estate of Strouse by and through Strouse v. Atlantic Cnty., No. 17-5662, 2019 WL 2588775, at *5 (D.N.J. June 24, 2019).  Count Six does not itself identify a separate cause of action but refers to a Section 1983 claim, presumably as set forth in Count Four.  Because the claim Plaintiff states in Count Six appears to be identical to the claim he states in Count Four, Count Six is dismissed as duplicative.

### B.   Counts Three and Ten: Tort Claims Against the Lyndhurst Defendants

The Lyndhurst Defendants argue that Counts Three and Ten must be dismissed because they are barred by the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59:1-1, et seq. The Court finds that the NJTCA bars Plaintiff's IIED claim but not his negligent hiring claim. Nonetheless, Plaintiff failed to state a claim for negligent hiring and retention.  Accordingly, for the foregoing reasons, Counts Three and Ten are dismissed.

### i.   The NJTCA

The Lyndhurst Defendants assert that Count Three (negligent hiring) and Count Ten (IIED) should be dismissed for failing to provide proper notice of those claims under the NJTCA.  The Court agrees with respect to Plaintiff's IIED claim.

The NJTCA requires a claimant to file notice of a claim of injury against a public entity or employee within ninety days of accrual of the claimant's cause of action.  N.J.S.A. § 59:8-3, § 59:8-8.  Failure to file the notice within ninety days "forever bar[s]" the claimant from recovering damages against the public entity unless the claimant files an application with the Superior Court of New Jersey seeking permission to file a late claim.  See N.J.S.A. 59:8-8(a), 59:8-9.

In addition, N.J.S.A. § 59:8-4 requires a claim to contain certain information, including, among other things, (1) "[t]he date, place and other circumstances of the occurrence or transaction

which gave rise to the claim asserted"; (2) "[a] general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim"; and (3) "[t]he amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of the computation of the amount claimed." N.J.S.A. 59:8-4. The NJTCA's notice requirements "are meant to achieve several goals," namely, "allow[ing] the public entity time to review the claim and to promptly investigate the facts and prepare a defense while the incident is fresh; provid[ing] the entity with an opportunity to settle meritorious claims before a lawsuit is filed; afford[ing] them an opportunity to correct the conditions which gave rise to the claim; and 'inform the State in advance as to the indebtedness or liability that it may be expected to meet.'" Doe v. Bd. of Educ. of Vocational-Technical Sch. Dist. in Cnty. of Gloucester, No. 17-13793, 2019 WL 2183860, at *4 (D.N.J. May 21, 2019) (quoting Velez v. City of Jersey City, 850 A.2d 1238, 1242 (N.J. 2004)).

The NJCTA bars suit against a government agency or employee unless the claimant has substantially complied with its requirements. See N.J.S.A. § 59:8-3; Lebron v. Sanchez, 970 A.2d 399, 405 (N.J. Sup. Ct. App. Div. 2009). Substantial compliance requires that "at the very least [the notice] . . . give[s] some indication of the asserted basis of the public entity's liability" so that the public entity may "promptly . . . investigate the claim." Newberry v. Twp. of Pemberton, 726 A.2d 321, 326 (N.J. Sup. Ct. App. Div. 1999).

Through Counts Three and Ten, Plaintiff brings state common law tort claims against the Lyndhurst Defendants: negligent hiring against Lyndhurst and the LPD (Count Three); and intentional infliction of emotional distress against the Lyndhurst Officers (Count Ten). The NJTCA thus applies to those claims. The record demonstrates that Plaintiff met the NJTCA's

filing requirement by timely submitting a tort claims notice with Lyndhurst in November of 2016. See ECF No. 44.7 ("TCN"). The Court therefore considers whether the notice substantially complied with the six items listed in N.J.S.A.§ 59:8-4.

The TCN provides sufficient facts to prompt Lyndhurst and the LPD to investigate their potential liability for the Lyndhurst officers' willful or negligent conduct alleged in Count Three. It states that the Lyndhurst officers "refused, neglected and/or failed to resuscitate [*sic*] [Mrs. Kenworthy] causing her death." TCN at 2. Under the item addressing the names of the public entity and/or employees causing the injury, Plaintiff identified the Lyndhurst Police Department, its officers, and the Lyndhurst Ambulance Squad, and warned that "but investigation is ongoing." Id. From these facts, Lyndhurst and the LPD had reason to surmise that Plaintiff may bring a claim against them based on Lyndhurst officers' conduct. A negligent hiring claim is certainly within the scope of likely claims Plaintiff could assert. Only substantial compliance with N.J.S.A. § 59:8-4 is required, and the Court finds that the information provided in the TCN meets that standard. The NJTCA therefore does not bar Count Three, Plaintiff's negligent hiring claim.

The TCN, however, does not substantially comply with N.J.S.A. § 59:8-4 with regard to Count Ten. The TCN stated that Plaintiff sought damages on behalf of Mrs. Kenworthy—not Plaintiff—for her "pain and suffering." TCN at 2. The TCN thus did not put the Lyndhurst Officers on notice of Plaintiff's potential IIED claim. Additionally, to the extent the Court could construe the TCN to put those defendants on notice of a potential IIED claim, it nonetheless fails the NJTCA's damages requirement. The NJTCA prohibits such damages unless there is a permanent injury where medical expenses exceed $3,600. See N.J.S.A. § 59:9-2(d). Though the TCN states that Plaintiff seeks damages in the amount of "twenty five million dollars," it does not provide any basis for that amount (for example, whether Plaintiff received medical treatment) or

state that Plaintiff has suffered a permanent injury. TCN at 2. Thus, dismissal of Count Ten against the Lyndhurst Officers is appropriate. See Gretzula v. Camden Cnty Technical Schools Bd. of Educ., 965 F. Supp. 2d 478, 491 (D.N.J. 2013) (dismissing Plaintiff's IIED with prejudice because NJTCA barred recovery for damages for that claim).

### ii.     Failure to State a Negligent Hiring Claim

The Lyndhurst Defendants argue that, notwithstanding the NJTCA, Plaintiff failed to state a negligent hiring or retention claim against Lyndhurst and the LPD.[10] The Court agrees.

Under New Jersey law, a municipality may be held liable for its own negligence in hiring or retaining a police officer. "In order to prevail under this theory, a plaintiff must show that the municipality knew or should have known of the police officer's dangerous propensities and the risk of injury he or she presents to the public." Love v. Monroe Twp., No. 09-1665, 2011 WL 765981, at *4 (D.N.J. Feb. 25, 2011).

Here, Plaintiff fails to provide sufficient facts to raise a claim for negligent hiring. Plaintiff alleges that the LPD "knew or should have known . . . that the Defendant Officers were potentially dangerous." Am. Compl. ¶ 225. With regard to Lyndhurst, Plaintiff merely states that Lyndhurst negligently hired and retained the officers. First, while Plaintiff states that the officers were potentially dangerous, he does not allege any facts demonstrating those officers' dangerous propensities were known or should have been known by the LPD. That the officers had "potential" to be dangerous does not mean that those officers tended to be dangerous. Second, Plaintiff's

---

[10] The Lyndhurst Defendants also claim that they are immune from liability for Count Three under the NJTCA, but they do not provide any basis for such immunity. See Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 445 (D.N.J. 2011) (providing that to establish good faith immunity under the NJTCA, the public entity or employee must demonstrate "objective reasonableness" or that they behaved with "subjective good faith") (quoting Alston v. City of Camden, 773 A.2d 693, 703 (N.J. 2001)). Because the Lyndhurst Defendants failed to demonstrate either objective reasonableness or subjective good faith, the Court will not consider whether good faith immunity exists.

conclusory statement that Lyndhurst negligently hired and retained the officers is clearly insufficient to state a claim. For these reasons, Count Three is dismissed.

### C. Count Seven: Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, against the Landlord Defendants and Lyndhurst Officers

In Count Seven, Plaintiff appears to allege three claims under RICO: (1) a substantive violation against the Landlord Defendants for wire fraud and theft by extortion; (2) a substantive violation against the Lyndhurst Officers for manslaughter; and (3) a conspiracy between the Landlord Defendants and the LPD under Section 1962(d).[11] The Landlord and Lyndhurst Defendants separately move to dismiss Count Seven on the ground that Plaintiff has failed to allege necessary elements of a RICO violation. The Court agrees.

RICO authorizes civil suits by "'[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962].'" Amos v. Franklin Fin. Servs. Corp., 509 F. App'x 165, 167 (3d Cir. 2013) (quoting 18 U.S.C. § 1964(c)). To plead a RICO claim under Section 1962(c), "the plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (internal quotation marks and citation omitted). "A pattern of racketeering requires at least two predicate acts of racketeering." Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004) (citing 18 U.S.C. § 1961(5)), which are listed in 18 U.S.C. § 1961(1). The plaintiff must plausibly demonstrate that such predicate acts "are related, and . . . amount to or pose a threat of continued criminal activity." See United States v. Bergrin, 650 F.3d 257, 267 (3d Cir. 2011) (internal quotation marks and citation omitted).

---

[11] The Complaint fails to identify the specific statutory basis for Plaintiff's substantive RICO claims. However, based on Plaintiff's allegations, it appears that those claims arise under Section 1962(c) because the Complaint neither pleads an investment of racketeering income in the acquisition of an enterprise (Section 1962(a)) nor an acquisition of control of an enterprise in interstate commerce (Section 1962(b)). See Am. Compl. ¶¶ 248-56.

"'Relatedness' can be shown through evidence that the criminal activities 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" Id. (citation omitted). "Continuity" can either be closed-ended or opened-ended. See H.J. Inc. v. Northwestern Bell Tele. Co., 492 U.S. 229, 241 (1989). Closed-ended continuity refers to "a closed period of repeated conduct" and is established by "proving a series of related predicates extending over a substantial period of time." Id. at 241-42. Open-ended continuity refers "to past conduct" that threatens repetition and is established by "'proving a threat of continuity, which exists where the predicate acts themselves involve threats of long-term racketeering activity, or where the predicate acts are part of an entity's regular way of doing business.'" Germinaro v. Fid. Nat'l Title Ins. Co., 737 F. App'x 96, 102 (3d Cir. 2018) (quoting United States v. Pelullo, 964 F.2d 193, 208 (3d Cir. 1992)).

Here, the Amended Complaint does not plausibly state a RICO claim, even under the more liberal standard applied to pro se litigants. First, although Count Seven states that Plaintiff is entitled to damages, Plaintiff does not plead an injury to his business or property caused by the Landlord Defendants' alleged conduct. See Sedima S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) (explaining that under Section 1962(c), "[t]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by conduct constituting the violation"). That Plaintiff felt "intimidated" does not satisfy the injury requirement. See Genty v. Resolution Trust Corp, 937 F.2d 899, 918 (3d Cir. 1991) ("In ordinary usage, 'injury to business or property' does not denote physical or emotional harm to a person.") (emphasis in original). Plaintiff's failure to plead a cognizable injury under RICO is fatal to his claim.

Second, Plaintiff failed to properly alleged a pattern of racketeering activity by the Landlord Defendants or the Lyndhurst Officers.  Plaintiff merely pleads one predicate act of racketeering activity—manslaughter—against the Lyndhurst Defendants, which is not sufficient under RICO.  See 18 U.S.C. § 1961(5) (providing that at least two predicate acts are required for RICO liability).  And, while Plaintiff alleges two predicate acts by the Landlord Defendants—wire fraud and theft by extortion—each, as pled, are deficient.

With respect to wire fraud, Plaintiff fails to meet Rule 9(b)'s heightened pleading standard for fraud claims.  See Lum, 361 F.3d at 223-24.  "[W]ire fraud consists of (1) a scheme to defraud, (2) use of the . . . interstate wires to further that scheme, and (3) fraudulent intent."  Jaye v. Oak Knoll Village Condo. Owners Ass'n, Inc., 751 F. App'x 293, 297 (3d Cir. 2010).  The Amended Complaint merely states that the Landlord Defendants "used their telephones to communicate with each other" and Plaintiff with the objective to "unjustly take money" from Plaintiff.  It lacks any facts suggesting a fraudulent scheme or fraudulent intent.  Such deficiencies certainly fall short of Rule 9(b).  See JDM Grp., LLC v. Passaic Valley Water Comm'n, No. 18-14028, 2019 WL 6606967, at *6 (D.N.J. Dec. 4, 2019) (finding RICO allegation deficient where the complaint failed "to include specific dates, places, or times or inject precision or any measure of substantiation" to support predicate wire fraud claim).

With respect to theft by extortion, Plaintiff does not allege that the Landlord Defendants unlawfully obtained his property—a necessary requirement for that charge under New Jersey law.  See N.J.S.A. § 2C:20-5 ("A person is guilty of theft by extortion "if he purposely and unlawfully obtains property of another by extortion.") (emphasis added).  At most, Plaintiff alleges that the Landlord Defendants threatened Plaintiff that they would take certain actions, like have his children taken away and him arrested, unless he paid them money.  But while threats may be

enough to demonstrate extortion, see id., they do not establish the requisite act of theft. Plaintiff's claims for wire fraud and theft by extortion are thus inadequately pled.

Having failed to properly allege at least two predicate acts of racketeering by the Landlord Defendants or Lyndhurst Officers, Plaintiff cannot establish either the relatedness or continuity requirements. Plaintiff's substantive RICO claims therefore cannot be sustained. In the absence of a substantive RICO claim, Plaintiff's conspiracy claim under Section 1962(d) fails. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993). Count Seven is dismissed.

### D. Counts Eight, Nine, and Ten: Negligence Claims Against Adapt

Adapt argues that Counts Eight, Nine, and Ten must be dismissed against it because Plaintiff's negligence and intentional infliction of emotional distress ("IIED") claims are subsumed by the New Jersey Product Liability Act ("PLA"), N.J.S.A. § 2A:58C-2. The Court agrees.

The PLA "'established the sole method to prosecute a product liability action' such that 'only a single product liability action remains.'" Clements v. Sanofi-Aventis, U.S., Inc., 111 F. Supp. 3d 586, 596 (D.N.J. 2015) (quoting Tirrell v. Navistar Int'l, Inc., 591 A.2d 643 (N.J. Super. Ct. App. Div. 1991)). Aside from breach of express warranty, the PLA subsumes any cause of action "for harm caused by a product, irrespective of the theory underlying the claim." N.J.S.A. § 2A:58C-1(b)(3). Accordingly, "[u]nder New Jersey law negligence is no longer viable as a separate claim for harm caused by a defective product." Port Auth. of N.Y. and N.J. v. Arcadian Corp., 189 F.3d 305, 313 (3d Cir. 1999); see also Thomas v. Ford Motor Co., 70 F. Supp. 2d 521, 528 (D.N.J. 1999) ("Recovery for negligence in a product liability action must be sought under the [PLA].").

Here, Plaintiff alleges that Adapt was negligent and grossly negligent in, among other things, developing and selling Narcan, failing to conduct proper safety studies, training its users,

and providing inadequate warnings about Narcan's risks. Though Plaintiff's Amended Complaint does not explicitly state that Narcan is a defective product, his negligence claims seek damages for harm caused by a product and its manufacturer's failure to warn about that product's risks. These are certainly product liability claims encompassed by the PLA. Plaintiff's IIED claim is similarly subject to the PLA. See Chester v. Boston Sci. Corp., No. 16-02421, 2017 WL 751424, at *4 (D.N.J. Feb. 27, 2017) (dismissing an IIED claim as subsumed by the PLA). Counts Eight, Nine, and Ten against Adapt are thus dismissed.

### E. Count Ten: IIED Against the Landlord Defendants

The Landlord Defendants argue that Count Ten warrants dismissal because it does not state a claim under federal law. The Court agrees that dismissal of Count Ten is warranted for failure to state a claim.

To state an IIED claim, a plaintiff must allege "(1) that the defendant intended to inflict emotional distress or that he know or should have known that emotional distress was the likely result of his conduct, (2) that the conduct was 'extreme and outrageous,' (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4) that the emotional distress by the plaintiff was severe." Fahnbullen v. Steneck, No. 15-5075, 2018 WL 1610692, at *11 (D.N.J. Apr. 3, 2018). The severity requirement necessitates distress "so severe that no reasonable man can be expected to endure it." Fregara v. Jet Aviation Bus. Jets, 764 F. Supp. 940, 956 (D.N.J. 1991) (internal quotation marks and citation omitted). New Jersey law requires the plaintiff to "at least allege the kind of illness or stress they endured for their claim to survive a motion to dismiss" and "to assert that they sought treatment for their alleged distress." Botts v. The New York Times Co., No. 03-1582, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003) (collecting cases). In addition, "New Jersey sets a 'high bar' for a plaintiff to establish extreme and outrageous conduct."

<u>Peters v. Countrywide Home Loans, Inc.</u>, No. 15-6329, 2016 WL 2869059, at *6 (D.N.J. May 17, 2016).  Plaintiff must demonstrate conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  <u>Subbe-Hirt v. Baccigalupi</u>, 94 F.3d 111, 114 (3d Cir. 1996) (internal quotation marks and citations omitted).

Plaintiff claims that the Landlord Defendants subjected him to "outrageous treatment beyond all bounds of decency," Am. Compl. ¶ 284, and describes harassing and threatening conduct primarily by Robert.  However, Plaintiff's allegations, even if accepted as true, fail to meet the high bar for stating an IIED claim.  First, under New Jersey law, threats and annoyances are not enough to establish IIED liability.  <u>See</u> <u>Smith v. Twp. of Greenwich</u>, 519 F. Supp. 2d 493, 514 (D.N.J. 2007) (citing <u>49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.</u>, 547 A.2d 1134 (N.J. Sup. Ct. App. Div. 1988)).  Thus, Plaintiff's allegations about Robert's threats do not alone demonstrate "outrageous" conduct.

Second, while Plaintiff describes potential harassing conduct by the Landlord Defendants, the Complaint does not adequately demonstrate that Plaintiff suffered <u>severe</u> emotional distress as a result of such conduct.  Plaintiff neither alleges the nature of the injuries he sustained nor that he sought medical treatment for his alleged injuries.  The Complaint's conclusory statement that Plaintiff suffered "severe emotional distress, resulting in bodily injury, and damages," Am. Compl. ¶ 289, without explaining the extent of or treatment sought for those injuries is insufficient to state an IIED claim.

Accordingly, Count Ten is dismissed against the Landlord Defendants.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motions to Dismiss, ECF Nos. 43, 44, 45, 46,

Plaintiff's Amended Complaint, ECF No. 30.1, are **GRANTED**. With respect to Count Four,

Plaintiff may file an amended pleading no later than thirty (30) days after entry of this Opinion

specifying the "responding officers" who are potentially liable under Section 1983 for the

substantive due process violation alleged. An appropriate Order follows.

Dated: January 21, 2020

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**